UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

REGENT INSURANCE CO. and GENERAL )
CASUALTY INSURANCE COMPANY, )
)
    Plaintiffs, ) No. 4:14-CV-1759 RLW
)
v. )
)
INTEGRATED PAIN MANAGEMENT, S.C. )
and MICHAEL C. ZIMMER, D.C., P.C., )
)
    Defendants. )

## MEMORANDUM AND ORDER

This matter is before the court on Cincinnati Insurance Company's Motion for Summary Judgment (ECF No. 47) and Hartford's Motion for Summary Judgment (ECF No. 50). These matters are fully briefed and ready for disposition.

## BACKGROUND

Dr. Tian Xia, d/b/a Integrated Pain Management ("IPM") is a Defendant in a class action lawsuit, *Michael C. Zimmer, D.C., P.C., individually and on behalf of all others similarly situated v. Integrated Pain Management, S.C.*, 4:14-cv-1121 ("Zimmer Suit"). Subsequently, the Zimmer Suit was amended to add Dr. Tian Zia, individually, and the entities Tian Medical, Inc. and Tian Medical, LLC ("XIA") as party defendants. In the Zimmer Suit, Zimmer seeks damages from IPM for IPM sending unsolicited telefaxes, allegedly in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") and common law conversion.

As relevant to the instant motions, Cincinnati Insurance Company ("Cincinnati") and Hartford Fire Insurance Company ("Hartford") seek declarations that they owe no duty to defend or indemnify IPM for any claims or causes of action asserted in the underlying Zimmer Suit.

Zimmer Lawsuit

On or about April 30, 2014, Zimmer filed a lawsuit, *Michael C. Zimmer, D.C., P.C., individually and on behalf of all others similarly situated v. Integrated Pain Management, S.C.* The Zimmer Suit was originally pending in the Circuit Court of St. Louis County, Missouri, 14SL-CC1419. On or about June 19, 2014, the Zimmer Lawsuit was removed to the United States District Court, Eastern District of Missouri, 14-cv-1121. On or about March 10, 2015, the Zimmer Suit was amended to include Dr. Tian Xia, individually, and the entities Tian Medical, Inc. and Tian Medical, LLC as party Defendants (hereinafter "Xia"). The Zimmer Suit alleges that on or about July 11, 2012, and on September 24, 2012, Tian Medical, Inc., Tian Medical, LLC and/or Dr. Xia sent unsolicited telefaxes to Zimmer and at least 40 other putative class members. The underlying complaint alleges that, as a result of these unsolicited telefaxes, the recipients (and/or their employees) wasted time, interrupted or invaded the recipients' privacy, and prevented the intended business use of the recipients' fax machine.

The Zimmer Suit alleges that sending these unsolicited telefaxes constitutes: (1) a violation of the TCPA, and (2) a common law conversion of the recipients' fax machine, toner, paper and employee time. The Zimmer Suit seeks as damages to enjoin IPM from sending further unsolicited telefaxes and damages of $500 per telefax, per recipient; statutory penalties of $1500 per telefax, per recipient for intentional misconduct; unspecified compensatory damages; attorney fees and cost and expenses of the suit; plus pre-judgment and post-judgment interest at 9%.

In the amended complaint in this action, Cincinnati seeks a declaration that Cincinnati owes no duty to defend or indemnify IPM for any claims or causes of action asserted in the underlying Zimmer Suit. (4:15cv236, ECF No. 61). Thereafter, Defendants also obtained leave

to file a third party action (Case No. 15cv236) against another insurance carrier, Hartford and Allstate Insurance Company (4:15cv236, ECF No. 64-66).

Cincinnati Policy

On or about December 6, 2011, Cincinnati issued a Business Liability policy, number EBP 0065028, to "Dr. Tian Xia, d/b/a Integrated Pain Management" for the policy period of December 6, 2011 through December 6, 2012 (the "Business Policy"). On or about December 6, 2011, Cincinnati issued an Excess Liability policy number EXS 0116287 to "Dr. Tian Xia d/b/a Integrated Pain Management" for the Policy Period of December 6, 2011 to December 6, 2012 (the "Excess Policy") (hereinafter, the Business Policy and the Excess Policy will be collectively referred to as the "Cincinnati Policies").

Included in the Business Policy issued by Cincinnati was an exclusion specifically addressing liability for conduct which directly or indirectly is alleged to violate the TCPA. Specifically, exclusion (p)(18) of the Business Policy states as follows;

This insurance does not apply to:

\*\*\*

    p.    Personal and advertising injury:

\*\*\*

    (18)    Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    (a)    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

    (b)    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(c) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

In addition, exclusion (u) of the Business Policy states as follows:

This insurance does not apply to:

u. Distribution of Material in Violation of Statutes

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

   a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

   b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

   c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

The Excess Policy provides, in part, in paragraph A.5 that:

The terms, definitions, conditions, limitations and exclusions of the 'underlying insurance' are made a part of this Coverage Part except for:

   a. Any term or condition relating to:

      (1) Any duty to investigate or defend;

      (2) The limits of insurance;

      (3) The payment of expenses;

      (4) The premium;

(5) Cancellation or non-renewal;

(6) Any renewal agreement;

(7) The policy period; or

b. Any other provision that is not consistent with this Coverage Part; in which case the terms, definitions, conditions, limitations and exclusions of this Coverage Part will apply.

In addition, Section I(B)(2) of the Excess Policy contains the following exclusion:

This insurance does not apply to:

2. Distribution of Material in Violation of Statutes

Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including an amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communication or distribution of material or information.

Hartford Policy

Hartford issued certain liability policies to Tian Medical, Inc., bearing policy number 83 UUN NM6799, effective annually from December 6, 2010 to December 6, 214 but was canceled effective December 6, 2013 to be rewritten. Hartford issued certain liability policies to Tian

Medical, Inc. bearing policy number 83 UEN PY3522, effective annually from December 6, 2013 to December 6, 2015 (collectively referred to as the "Hartford Policies").

The liability coverage in all of the Hartford Policies provides, in part, as follows:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SECTION I - COVERAGES

COVERAGE 1 BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

\*\*\*

> b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

The Hartford Policy effective from December 6, 2010 to December 6, 2011 contains the following endorsement:

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

EXCLUSION-VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I-Coverage A-Bodily Injury and Property Damage Liability:

2. Exclusions

    This insurance does not apply to:

    DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

    "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

    \*\*\*

B. The following exclusion is added to Paragraph 2., Exclusions of Section I-Coverage B-Personal And Advertising Injury Liability:

2. Exclusions

   This insurance does not apply to:

   DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

   "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

   a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

The Hartford Policies, effective annually from December 6, 2011 to December 6, 2015, contain an endorsement which states:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to paragraph 2., Exclusions of Section I-Coverage A-Bodily Injury and Property Damage Liability:

2. Exclusions

   This insurance does not apply to:

   Recording And Distribution of Material Or Information In Violation of Law

   "Bodily injury" or "property damage," arising directly or indirectly out of any action or omissions that violates or is alleged to violate:

    a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    \*\*\*

B. The following exclusion is added to paragraph 2., Exclusions of Section I-Coverage B-Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

Recording And Distribution of Material Or Information In Violation of Law

"Personal and advertising injury," arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

    \*\*\*

## I. MOTION FOR SUMMARY JUDGMENT

A. Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly

preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

**B. Cincinnati and Hartford's Motions for Summary Judgment**

In this action, as an initial matter, all parties agree that Illinois law controls this dispute. *See* ECF No. 56 at 1 (noting that the relevant inquiry is how Illinois Supreme Court would decide this dispute); ECF No. 59 at 1 (affirming the consensus that Illinois law controls). Zimmer also admits the Cincinnati and Hartford both issued policies with the same relevant terms. (ECF No. 56 at 2). In the Zimmer Suit, the plaintiff alleges claims (1) under the TCPA and (2) for common law conversion. The Underlying Complaint alleges that "Defendants have sent other facsimile transmissions that were unsolicited, even if not material advertising the

commercial availability of property, goods, or services or to persons with an established business relationship, to many other persons throughout the alleged class periods." (Case No. 4:14cv1121, ECF No. 33, ¶18). The relevant policies provide two relevant coverages: "personal and advertising injury" and "property damage."

Cincinnati and Hartford (the "Insurers") argue that Zimmer's claims in the Zimmer Suit are barred by the TCPA exclusions in the policies. The Insurers rely on *G.M. Sign, Inc. v. State Farm Fire & Cas. Co.*, 2014 IL App (2d) 130593, ¶ 38, 18 N.E.3d 70, 80 (Ill. App. Ct. 2014). The plaintiff in that case alleged violation of the TCPA and common-law conversion, among other counts. The insurance policy included a TCPA exclusion identical to the exclusions in this case. The Illinois Court of Appeals held that "State Farm had no duty to defend or to indemnify … in the underlying suit. It follows that State Farm is not estopped from raising policy defenses, because its denial of coverage was not wrongful." *Id.* at 80; *see also Illinois Cas. Co. v. W. Dundee China Palace Rest., Inc.*, 49 N.E.3d 420, 427 (Ill. App. Ct. 2016)(affirming denial of coverage based upon TCPA exclusion).

In response, Zimmer argues that the exclusions in the policies only apply to damages arising out of acts or omissions that violate or are alleged to violate the TCPA. Zimmer argues that the underlying class action seeks redress for all unsolicited facsimiles sent by or on behalf of the Insurers. Zimmer maintains that its claims are not limited to claims based on facsimiles that violate the TCPA and its claims contain specific factual allegations and claims for common law conversion that are in no way contingent on proof of TCPA violations. Zimmer asserts that the Underlying Complaint and factual allegations in this case are different than those alleged in the Illinois appellate cases cited by the Insurers. Zimmer points out that, unlike the Illinois appellate court cases cited by the Insurers, the Underlying Complaint specifically alleges the transmission

of faxes that do not violate the TCPA as comprising part of the underlying claims. Zimmer claims that the Insurers must defend for that reason alone.

Zimmer maintains that relevant Illinois duty to defend standards preclude entry of summary judgment in favor of the Insured. "The insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy." *Illinois Emcasco Insurance,* 337 Ill.App.3d at 361, 271 Ill.Dec. 711, 785 N.E.2d 905; *Am. Econ. Ins. Co. v. DePaul Univ.*, 383 Ill. App. 3d 172, 177–78, 890 N.E.2d 582, 588 (2008). Zimmer contends that all of the underlying claims fall within the coverage grants of the policies. Zimmer notes that unless the TCPA exclusion excludes all potential claims in the Underlying Action, then the Insurers have a duty to defend.

Moreover, Zimmer asserts that the Underlying Complaint pleads unsolicited facsimiles that do not violate the TCPA. The TCPA prohibits the "use [of] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless—(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient...." 47 U.S.C. §227(b)(1)(C). The statute defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior invitation or permission...." 47 U.S.C. §227. Zimmer contends that a fax that is "not of material advertising the commercial availability of property, goods, or services" (Underlying Complaint, ¶18) is not an "unsolicited advertisement" and therefore the sending of such an unsolicited fax

does not violate the TCPA. Zimmer contends that the Underlying Complaint pleads both advertisements and non-advertisements for the purpose of recovery for conversion. (ECF No. 56 at 7).

In addition, Zimmer notes that the Underlying Complaint seeks redress under the TCPA claim for faxes that violate the statute and under common law conversion for all of the unsolicited faxes, including those alleged in paragraph 18. Zimmer asserts that this includes faxes that were sent to recipients with an "established business relationship," which is a common defense to TCPA claims. (ECF No. 56 at 7).

Zimmer further contends that the cases on which the insurers rely on did not address an underlying complaint that made similar allegations. (ECF No. 56 at 7-8). Zimmer contends that the complaints in *G.M. Sign*, 2014 IL App (2d) 130593 at ¶30, *Illinois Cas.*, 2015 IL App (2d) 150016, ¶19 are vague or silent as to whether the other faxes violated the TCPA. (ECF No. 56 at 7-8). Zimmer maintains that there is no vagueness here.

Zimmer further maintains that, even if the complaints in *G.M. Sign* and *Illinois Casualty* are not vague, then Insurers would still be obligated to defend. (ECF No. 56 at 8). Zimmer claims that the *G.M. Sign* and *Illinois Casualty* do not represent how the Illinois Supreme Court would decide this issue. (ECF No. 56 at 8 (citing *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015)). Zimmer contends that vagueness in a complaint is a reason that an insurer must defendant must defend and not reason to excuse a defense. Zimmer states that "the fact that the amended complaint does not say one way or the other whether all of the faxes were advertisements or whether they all were sent to people without established business relationships with the insureds should establish the insurer's duty to defend, not the lack thereof." (ECF No. 56 at 9). Zimmer maintains that *G.M. Sign* and *Illinois Casualty* do not follow the well-

established Illinois Supreme Court precedent that requires that "[a]n insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *National Fire Insurance of Hartford v. Walsh Construction Co.*, 392 Ill.App.3d 312, 315–16, 330 Ill. Dec. 572, 909 N.E.2d 285 (2009).

The Court holds that the Illinois case law indicates to the Court that Zimmer's claims are subject to the TCPA exclusion in the subject policies. *Cont'l-Midwest Corp. v. Hotel Sherman, Inc.*, 13 Ill. App. 2d 188, 195–96, 141 N.E.2d 400, 404 (Ill. App. Ct. 1957) (federal court should follow lower state court's decision as precedent); *see Nationwide Mut. Ins. Co. v. Harris Med. Associates, LLC*, 973 F. Supp. 2d 1045, 1054 (E.D. Mo. 2013) (noting the different analysis under Illinois law where "*GM Sign* held that a similar exclusion barred coverage for a conversion claim because the acts alleged to constitute a TCPA violation were identical to those alleged to constitute a conversion claim, and the court concluded the common law tort therefore arose directly out of an act that was alleged to violate the TCPA"). Here, Zimmer tries to differentiate this case from relevant Illinois case law because "the Underlying Complaint pleads both advertisements and non-advertisements for the purpose of recovery for conversion." (ECF No. 56 at 7). As stated, Zimmer relies on paragraph 18 of the Second Amended Complaint, which alleges, "On information and belief, Defendants have sent other facsimile transmissions that were unsolicited, even if not of material advertising the commercial availability of property, goods, or services or to persons with established business relationship[s], to many other persons throughout the alleged class period." Zimmer argues that this paragraph constitutes a proper factual allegation pleading the transmission of other unsolicited facsimiles that do not violate the

TCPA, and therefore trigger the Insureds' duty to defend. However, Illinois case law demonstrates that all of Zimmer's claims fit within the TCPA exclusion in the relevant policies.

As in this case, parties in other Illinois appellate cases similarly alleged the TCPA exclusion applied only to TCPA claims. In *Illinois Casualty Co. v. West Dundee China Palace Restaurant*, the appellant filed a declaratory judgment action, seeking coverage for claims under the TCPA, for conversion and under the Illinois Consumer Fraud and Deceptive Business Practices Act. The appellant argued the TCPA exclusion does not apply "because the underlying complaint allows for the potential that it involves faxes that do not violate the TCPA and because the exclusion in [the insurer's] policy is limited to liability arising out of the TCPA itself." *Illinois Casualty Co. v. West Dundee China Palace Restaurant*, Reply brief of Appellant Wellington Homes, Inc. ECF No. 59-9, p. 6.[1] The appellant also argued that "the other similar faxes were not necessarily sent at the same time as the one receive by [the plaintiff]; were not necessarily sent to persons without an established business relationship with Defendants; and were not necessarily 'advertisements' of the purpose of the TCPA." *Id.*, p. 3. The *West Dundee* court disagreed with this argument and found that the underlying complaint did not trigger a duty to defend. The *West Dundee* court noted that "[c]ommon to all three counts are allegations that West Dundee sent the unsolicited faxes without the express permission or invitation of the underlying plaintiffs." *Illinois Cas. Co. v. W. Dundee China Palace Rest., Inc.*, 2015 IL App (2d) 150016, ¶ 19, 49 N.E.3d 420, 426. The Court noted that "although count II is labeled 'conversion' and count III is labeled 'Illinois Consumer Fraud and Deceptive Business Practices Act,' the conduct alleged in those counts constitutes nothing more than a rephrasing of the conduct alleged in count I[.]" *Illinois Cas. Co. v. W. Dundee China Palace Rest., Inc.*, 2015 IL

---

[1] This reply brief was filed by the same counsel that represents Zimmer in this action.

App (2d) 150016, ¶ 20, 49 N.E.3d 420, 426. The Illinois appellate court held that the complaint did not trigger the duty to defend where the "allegations in the remaining two counts of the underlying complaint completely fail to state facts that either actually or potentially bring the case within, or potentially within, the policy's coverage." *Illinois Cas. Co. v. W. Dundee China Palace Rest., Inc.*, 2015 IL App (2d) 150016, ¶ 19, 49 N.E.3d 420, 425.

Likewise, in another action, the plaintiffs alleged that "every unsolicited facsimile advertisement sent ... to plaintiffs or to class members violated the TCPA, common law conversion, and the Consumer Fraud Act." *CE Design Ltd. v. Cont'l Cas. Co.*, 2016 IL App (2d) 150530-U, ¶ 46. Like Zimmer, the claimant in *CE Design* argued that the TCPA exclusions did not apply to the conversion claim because: (1) there may be faxes that did not violate the TCPA, (2) GM Sign is distinguishable, and (3) vague allegations create a duty to defend under *Illinois Tool Works, Inc. v. Travelers Casualty & Surety Company*, 2015 IL App (1st) 132350, 389 Ill.Dec. 331, 26 N.E.3d 421. *CE Design Ltd. v. Cont'l Cas. Co.*, 2016 IL App (2d) 150530-U, ¶¶ 39-40, 47. Ultimately, the Illinois Appellate Court held that "the conversion and the Consumer Fraud Act counts in plaintiffs' underlying federal complaint ... arose from the same conduct that was the basis for the TCPA claim." *CE Design Ltd. v. Cont'l Cas. Co.*, 2016 IL App (2d) 150530-U, ¶ 46 (citing *Illinois Casualty Company v. West Dundee China Palace Restaurant, Inc.*, 2015 IL App (2d) 150016). The *CE Design* court also rejected the argument that a "vagueness" created a duty to defend based upon *Illinois Tool Works*, and that case was inapplicable because there is no coverage here based upon a policy exclusion. *Id.* at ¶47. Finally, the Court noted that "plaintiffs neglect to cite a number of cases from other jurisdictions that have found the Violation of Statutes exclusion to be clear, unambiguous, and to preclude coverage for TCPA violations and for causes of action which arise out of the same conduct as the

insured's alleged fax blasting in violation of the TCPA, including claims of conversion, the Consumer Fraud Act, and other state consumer fraud or consumer protection statutes." *Id.* at ¶ 48 (citing *Emcasco Insurance Company v. CE Design, Ltd.*, 784 F.3d 1371, 1384–85 (10th Cir. 2015) and *American Casualty Company of Reading, Pennsylvania v. Superior Pharmacy, LLC*, 86 F.Supp.3d 1307, 1312–15 (M.D.Fla. 2015)). Accordingly, the *CE Design* court held that the common law conversion count of plaintiffs' federal complaint did not trigger insurers' duty to defend.

Based upon this persuasive and overwhelming Illinois case law, the Court holds that the Illinois Supreme Court would hold that the application of the TCPA exclusion would exclude all of Zimmer's claims in the Zimmer Suite. The Court holds that the Insurers' duty to defend has not been triggered by the allegations in the Underlying Complaint, which merely restate the TCPA claims. Therefore, the Court grants the Cincinnati Insurance Company's and Hartford's Motions for Summary Judgment.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Cincinnati Insurance Company's Motion for Summary Judgment (ECF No. 47) and Hartford's Motion for Summary Judgment (ECF No. 50) are **GRANTED.**

Dated this 23rd day of September, 2016.

*/s/ Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**