UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REGENT INSURANCE CO. and GENERAL CASUALTY INSURANCE COMPANY, | ) ) ) ) |
| Plaintiffs, | ) No. 4:14-CV-1759 RLW ) |
| v. | ) ) ) |
| INTEGRATED PAIN MANAGEMENT, S.C. and MICHAEL C. ZIMMER, D.C., P.C., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the court on Plaintiffs Regent Insurance Company's and General Casualty Insurance Company's Motion for Summary Judgment (ECF No. 65). This matter is fully briefed and ready for disposition.

## BACKGROUND

The Court has previously gone through the background of this case in a previous Order. *See* ECF No. 77. Dr. Tian Xia, d/b/a Integrated Pain Management ("IPM") is a Defendant in a class action lawsuit, *Michael C. Zimmer, D.C., P.C., individually and on behalf of all others similarly situated v. Integrated Pain Management, S.C.*, 4:14-cv-1121 ("Underlying Lawsuit"). Subsequently, the Zimmer Suit was amended to add Dr. Tian Zia, individually, and the entities Tian Medical, Inc. and Tian Medical, LLC as party defendants. In the Underlying Lawsuit, Zimmer seeks damages from IPM for IPM sending unsolicited telefaxes, allegedly in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") and common law conversion. *See* Underlying Lawsuit, Second Amended Complaint, ECF No. 33 (hereinafter "Underlying Complaint").

On October 17, 2014, Regent Insurance Company ("Regent") and General Casualty Insurance Company ("General Casualty") (collectively, the "Insurers") filed this declaratory judgment action seeking a declaration that they have no duty to defend or indemnify IPM against the Underlying Lawsuit.

The plaintiff in the Underlying Lawsuit, Zimmer alleges in Count I, that IPM sent unsolicited marketing facsimiles in violation of the Telephone Consumer Protection Act ("TCPA"), and, in Count III, that IPM committed conversion by sending such facsimiles. Zimmer proposed a class period consisting of the four years before the filing of the Underlying Lawsuit on April 30, 2015. Zimmer alleged two specific instances wherein he received unsolicited facsimile advertisements from IPM: July 11, 2012 and September 24, 2012. Regent insured IPM under a policy providing Commercial General Liability Coverage for the period from November 18, 2010 to November 18, 2011, Policy No. CGI 0889547 ("Regent CGL Policy"). General Casualty Insurance Company insured IPM under a policy providing Commercial Umbrella Coverage for the period from November 18, 2010 to November 18, 2011, Policy CCU 0889546 ("General Casualty Umbrella Policy").

The Regent CGL Policy, in Form CG00 01 12 07, provides, in relevant part:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
    a. We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. …
    b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes places in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period;

\*\*\*

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages….

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

The General Casualty Umbrella Policy, in Form CU 01 12 07 provides, in part, as follows:

**COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay on behalf of the insured the "ultimate net loss" in excess of the retained limit because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" have been exhausted. . . . However, we will have no

duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; ....

\*\*\*

## COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

    a. We will pay on behalf of the insured the "ultimate net loss" in excess of the retained limit because of "personal and advertising injury" to which the insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" have been exhausted. . . . However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

    b. The insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was in the "coverage territory" during the policy period.

The Regent CGL Policy, in Form CG 00 68 05 09, contains the following endorsement:

**RECORDING AND DISTRIBUTION OF MATERIAL OR
INFORMATION IN VIOLATION OF LAW EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **q.** of Paragraph **2. Exclusions** of Section **I—Coverage A—Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This Insurance does not apply to:

**q. Recording And Distribution of Material Or Information In Violation of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of addition to such law; ...

B. Exclusion **p.** of Paragraph **2. Exclusions** of Section **I—Coverage B—Personal and Advertising Injury Liability** is replaced by the following:

2. Exclusions

This insurance does not apply to:

**p. Recording And Distribution of Material Or Information In Violation of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of addition to such law; ...

The General Casualty Umbrella Policy, in Form CU 00 04 05 09, contains the following endorsement:

**RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABLITY COVERAGE PART

A. Exclusion **u.** of Paragraph **2. Exclusions** of Section **I—Coverage A—Bodily Injury and Property Damage Liability** is replaced by the following:

2. **Exclusions**

This insurance does not apply to:

**u.  Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; …

B. Exclusion **a.(17)** of Paragraph **2. Exclusions** of Section **I—Coverage B—Personal and Advertising Injury Liability** is replaced by the following:

2. **Exclusions**

This insurance does not apply to:

a. "Personal and advertising injury":

**(17) Recording And Distribution of Material Or Information In Violation Of Law**
Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(a) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; …

## I. MOTION FOR SUMMARY JUDGMENT

A. Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### B. Regent Insurance Company and General Casualty Insurance Company's Motion for Summary Judgment

#### 1. Controlling Law

As an initial matter, the parties disagree regarding whether Illinois law controls this dispute. *See* ECF No. 71 at 3-4. However, IPM previously admitted that Illinois law controls. *See* ECF No. 56 at 1 (noting that the relevant inquiry is how Illinois Supreme Court would decide this dispute); ECF No. 59 at 1 (affirming the consensus that Illinois law controls). In any event, the Court holds that Illinois law applies under a choice of law analysis. Federal courts sitting in diversity in Missouri apply the Missouri choice-of-law rules. *Allianz Ins. Co. of Canada v. Sanftleben*, 454 F.3d 853, 855 (8th Cir. 2006) (citing *DCS Sanitation Mgmt., Inc. v. Castillo,* 435 F.3d 892, 895 (8th Cir.2006) (noting that in diversity cases federal courts apply the forum state's choice-of-law rules)). Missouri courts apply "the most significant relationship test as set forth in Restatement (Second) of Conflict of Laws Section 188 when resolving choice of law issues." *Sturgeon v. Allied Professionals Ins. Co.*, 344 S.W.3d 205, 211 (Mo. Ct. App. 2011) (citing *Sheehan v. Northwestern Mut. Life Ins. Co.,* 44 S.W.3d 389, 396 (Mo. Ct. App. 2000); *Emerson Elec. Co. v. Crawford & Co.,* 963 S.W.2d 268, 273–74 (Mo. Ct. App. 1997)).

Here, both the Regent CGL Policy and the General Casualty Umbrella Policy insured IPM, which has a principal place of business in Lombard, Illinois. Both policies were procured, negotiated, and delivered to IPM in Illinois, through its agent R-H Insurance Group, which is also located Illinois. "[I]n an action between parties to an insurance contract, the principal location of the insured risk is given greater weight than any other single contact in determining the state of applicable law." *Sturgeon*, 344 S.W.3d at 211. Additionally, this Court has already held that Illinois governs this agreement and judicial estoppel applies to that determination. (ECF No. 77 at 10). As a result, the Court holds that Illinois law should govern this case. Having decided this initial question, the Court turns to the substance of the Insured's motion.

**2. Coverage Period**

The Insurers claim that the allegations in the Underlying Lawsuit do not fall within the Policies' coverage period. The Policies issued by Regent and General Casualty provided coverage for the policy period of November 18, 2010 to November 18, 2011. The Underlying Lawsuit alleges that IPM sent unsolicited facsimile advertisements on or about July 11, 2012, and September 24, 2012. The Insurers note that, under occurrence-based liability policies such as the Regent and General Casualty policies, coverage is triggered for alleged damages occurring during the policy period. (ECF No. 66 at 6 (citing *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill. 2d 278, 314, 757 N.E.2d 481, 503 (2001) (coverage triggered at such time that a claimant suffers injury). Thus, when "the undisputed evidence shows that an occurrence did not fall within the period of time for which insurance coverage is provided, the insurer is not under a duty to either defend or indemnify." *Fremont Comp. Ins. Co. v. Ace-Chicago Great Dane Corp.*, 304 Ill. App. 3d 734, 744, 710 N.E.2d 132, 139 (1999). The Insurers claim that because the faxes were sent on July 11, 2012 and September 24, 2012, and were outside the applicable policy period, their policies afford no coverage for any alleged damages resulting from those faxes, or any other faxes sent outside of the policies' coverage period.

Defendant Michael C. Zimmer D.C., P.C.[1] contends that the Underlying Complaint implicated the policy coverage period. (ECF No. 72 at 11). Defendant states that, although the Underlying Complaint references only two specific instances of unwanted faxes—both in 2012—the Underlying Complaint makes clear that Count I seeks certification of a class encompassing four years prior to the filing of the Underlying Lawsuit and Count II seeks certification of a class encompassing five years prior to the filing of the Underlying Lawsuit. Defendant claims that these allegations include the coverage period for the Insurers' policy.

---

[1] Plaintiffs' insured Defendant Integrated Pain Management, did not file an opposition to Plaintiffs' Motion for Summary Judgment. *See* ECF No. 75 at 2, n.1.

(ECF No. 72 at 10-12 (citing *Illinois Tool Works Inc. v. Travelers Cas. & Sur. Co.*, 2015 IL App (1st) 132350, ¶ 10, 26 N.E.3d 421, 425 (Ill. Ct. App. 2015); *Nationwide Mut. Ins. Co. v. Harris Med. Associates, LLC*, 973 F. Supp. 2d 1045, 1056 (E.D. Mo. 2013)).

The Court holds that the allegations in the Underlying Complaint are sufficient to fall within the relevant time period covered under the Insurers' policies. Although the only specific facsimiles identified in the Underlying Complaint fall outside the policy period, the class allegations in the Underlying Complaint are broader than those two instances. The Underlying Litigation was filed on April 30, 2014, so if a class is certified as proposed, then Defendant could potentially be liable for other unsolicited faxes sent on or after April 30, 2010 (for Count I) or after April 30, 2009 (for Count II), which would be within the policy period. *Nationwide Mut. Ins. Co. v. Harris Med. Associates, LLC*, 973 F. Supp. 2d at 1056. As a result, the Insurers have not established they are entitled to judgment as a matter of law based upon the alleged acts occurring after coverage ended.

### 3. Exclusion

The Insurers also assert that the policies contain a TCPA exclusion which bars coverage for the Underlying Lawsuit, regardless of when the alleged actions occurred. Both the Regent CGL Policy and the General Casualty Umbrella Policy contain TCPA endorsements that expressly bar coverage for damages for "bodily injury," "property damage," or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is allege to violate" the TCPA. The Insurers claim that Count I of the Underlying Lawsuit alleges a direct violation of the TCPA and Count II of the Underlying Lawsuit alleges a claim for conversion that arises from the same acts that are alleged to violate the TCPA. Therefore, the Insurers claim that the Policies' TCPA exclusions bar coverage from the Underlying Lawsuit,

regardless of whether the relevant faxes were sent within the Policies' coverage period. (ECF No. 66 at 6). The Insurers rely on *G.M. Sign, Inc. v. State Farm Fire & Cas. Co.*, 2014 IL App (2d) 130593, ¶ 38, 18 N.E.3d 70, 80. (ECF No. 66 at 7-8). The plaintiff in that case alleged violation of the TCPA and common-law conversion, among other counts. The insurance policy included a TCPA exclusion similar to the exclusions in this case. The Illinois Court of Appeals held that "State Farm had no duty to defend or to indemnify ... in the underlying suit. It follows that State Farm is not estopped from raising policy defenses, because its denial of coverage was not wrongful." *Id.* at 80; *see also Illinois Cas. Co. v. W. Dundee China Palace Rest., Inc.*, 49 N.E.3d 420, 427 (Ill. App. Ct. 2016)(affirming denial of coverage based upon TCPA exclusion).

The Insurers also claim that the Underlying Lawsuit contains no claims that arise from the sending of faxes that are not alleged to violate the TCPA. (ECF No. 66 at 8). The Underlying Complaint contains an allegation that IPM "[o]n information and belief ... sent other facsimile transmission that were unsolicited, even if not of material advertising the commercial availability of property, goods, or services, or to persons with established business relationship, to many other persons throughout the alleged class period." In their pleadings, Defendants claim that the conversion claim arises, at least in part, from unsolicited faxes that do not violate the TCPA because they are not advertisements. (Underlying Complaint, ¶18). The Insurers assert that this argument is without merit because both Count I and Count II of the Underlying Complaint both stem from actions that are alleged to violate the TCPA. The Insurers rely on Illinois law in *G.M. Sign, Inc. v. State Farm Fire & Cas. Co.*, 18 N.E.3d 70, 83 (Ill. App. 2014) and *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, No. 13-CV-1922, 2015 WL 1543216, at *8 (N.D. Ill. Mar. 31, 2015) to support this position. (ECF No. 66 at 9-11). The *Addison* court noted that the underlying complaint's TCPA claim incorporated the same allegations at the

conversion claim and, as such, "the injury and damage alleged in the conversion claim arises directly or indirectly out of an "action ... that *is alleged* to violate" the TCPA." *Addison*, 2015 WL 1543216, at *8. The Insurers point out that the Policies' TCPA exclusions in this case, as in *Addison*, specifically include any action that "violates or is alleged to violate" the TCPA. (ECF No. 66 at 10).

In response, Defendant argues that the policy exclusions should be construed narrowly and do not bar the underlying conversion claim. Defendant asserts that the conversion claim is "independently sufficient in the absence of the TCPA and seeks independent damages." (ECF No. 72 at 4). Therefore, Defendant maintains that the conversion claim does not "arise out of" any TCPA violation. (ECF No. 72 at 4). Defendant notes that a conversion claim based on an unwanted fax does not depend on whether the message was an advertisement or whether there was an established business relationship between the sender and the recipient. (ECF No. 72 at 6). Defendant argues that "[t]he conversion claim thus is based on one fact common to the TCPA claim—that IPM sent a fax to a class member—but beyond that is premised on different facts." (ECF No. 72 at 6). Defendant contends that the conversion claim does not rely on the TCPA as the source of rights under the conversion claim and seeks separate damages. (ECF No. 72 at 6). Defendant, however, admits the Illinois appellate court decisions support a contrary determination. (ECF No. 72 at 6, n.1). Defendant's only argument in opposition to these opinions is that Missouri, not Illinois law, applies.

The Court determines whether the claims fall within the TCPA exclusion. This Court has already determined that, contrary to Defendant's argument, Illinois applies. Therefore, the Court holds that the Illinois case law requires the Court to find that the underlying claims are subject to the TCPA exclusion in the subject policies. *Cont'l-Midwest Corp. v. Hotel Sherman, Inc.*, 13 Ill.

App. 2d 188, 195–96, 141 N.E.2d 400, 404 (Ill. App. Ct. 1957) (federal court should follow lower state court's decision as precedent); *see Nationwide Mut. Ins. Co. v. Harris Med. Associates, LLC*, 973 F. Supp. 2d 1045, 1054 (E.D. Mo. 2013) (noting the different analysis under Illinois law where "*GM Sign* held that a similar exclusion barred coverage for a conversion claim because the acts alleged to constitute a TCPA violation were identical to those alleged to constitute a conversion claim, and the court concluded the common law tort therefore arose directly out of an act that was alleged to violate the TCPA"). The parties in other Illinois appellate cases similarly alleged the TCPA exclusion applied only to TCPA claims. In *Illinois Casualty Co. v. West Dundee China Palace Restaurant*, the appellant filed a declaratory judgment action, seeking coverage for claims under the TCPA, for conversion and under the Illinois Consumer Fraud and Deceptive Business Practices Act. The appellant argued the TCPA exclusion did not apply "because the underlying complaint allows for the potential that it involves faxes that do not violate the TCPA and because the exclusion in [the insurer's] policy is limited to liability arising out of the TCPA itself." *Illinois Casualty Co. v. West Dundee China Palace Restaurant*, Reply brief of Appellant Wellington Homes, Inc. ECF No. 59-9, p. 6. The appellant also argued that "the other similar faxes were not necessarily sent at the same time as the one receive by [the plaintiff]; were not necessarily sent to persons without an established business relationship with Defendants; and were not necessarily 'advertisements' of the purpose of the TCPA." *Id.*, p. 3. The *West Dundee* court disagreed with this argument and found that the underlying complaint did not trigger a duty to defend. The *West Dundee* court noted that "[c]ommon to all three counts are allegations that West Dundee sent the unsolicited faxes without the express permission or invitation of the underlying plaintiffs." *Illinois Cas. Co. v. W. Dundee China Palace Rest., Inc.*, 2015 IL App (2d) 150016, ¶ 19, 49 N.E.3d 420, 426. The

Court noted that "although count II is labeled 'conversion' and count III is labeled 'Illinois Consumer Fraud and Deceptive Business Practices Act,' the conduct alleged in those counts constitutes nothing more than a rephrasing of the conduct alleged in count I[.]" *Illinois Cas. Co. v. W. Dundee China Palace Rest., Inc.*, 2015 IL App (2d) 150016, ¶ 20, 49 N.E.3d 420, 426. The Illinois appellate court held that the complaint did not trigger the duty to defend where the "allegations in the remaining two counts of the underlying complaint completely fail to state facts that either actually or potentially bring the case within, or potentially within, the policy's coverage." *Illinois Cas. Co. v. W. Dundee China Palace Rest., Inc.*, 2015 IL App (2d) 150016, ¶ 19, 49 N.E.3d 420, 425; *see also CE Design Ltd. v. Cont'l Cas. Co.*, 2016 IL App (2d) 150530-U, ¶ 40-48); *G.M. Sign, Inc. v. State Farm Fire & Cas. Co.*, 2014 IL App (2d) 130593, ¶ 38, 18 N.E.3d 70, 80; *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, No. 13-CV-1922, 2015 WL 1543216, at *8 (N.D. Ill. Mar. 31, 2015) ("The injury and damage alleged in the conversion claim thus fall within the plain language of the exclusionary provisions.").

Based upon this persuasive and overwhelming Illinois case law, the Court holds that the Illinois Supreme Court would hold that the application of the TCPA exclusion would exclude all of the claims in the Underlying Lawsuit. The Court holds that the Insurers' duty to defend has not been triggered by the allegations in the Underlying Complaint, which merely restate the TCPA claims. Therefore, the Court grants the Regent's and General Casualty's Motions for Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Regent Insurance Company's and General Casualty Insurance Company's Motion for Summary Judgment (ECF No. 65) is **GRANTED.**

Dated this 27th day of October, 2016.

                                               */s/ Ronnie L. White*
                                               **RONNIE L. WHITE**
                                               **UNITED STATES DISTRICT JUDGE**